

Signed/Docketed
February 28, 2012

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

In re: )
) Case No. 06-10626 MER
JAMES RICHARD BERNHARDT )
LYNN MARIE BERNHARDT ) Chapter 13
)
Debtors. )

## ORDER

This matter comes before the Court on the United States Trustee's *Motion to Examine Reasonableness of Fees Charged by Ken McCartney as Debtors' Counsel In This and Other Cases* (Docket No. 177) (the "Motion"), and Ken McCartney's Response (Docket No. 183).[1] The Court held an evidentiary hearing, and each party presented evidence and legal arguments, upon which the Court bases the following findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) as it concerns the administration of several bankruptcy estates.

## BACKGROUND FACTS

Ken McCartney ("McCartney") is a bankruptcy attorney who practices in Wyoming and Colorado. He has been working on Colorado cases since 1991.

In his Motion, the United States Trustee (the "UST") seeks an order requiring McCartney to disgorge all fees paid in the cases set forth in his Exhibit 1. The UST notes the UST's Cheyenne office filed a motion for an order denying McCartney compensation in the Wyoming case of *In re Hesterberg*, Case No. 10-21094 (Bankr. D. Wyo.). Thereafter, the UST's Office in Denver reviewed McCartney's Colorado cases, and identified numerous concerns, including the following:

---

[1] Although the above captioned case is the "named case" in the UST's Motion, the list of cases for which the UST seeks review, together with itemization of fees and other comments, is in evidence as McCartney's Exhibit B and UST's Exhibit 1.

1) Billing debtors for time to attend the 11 U.S.C. § 341[2] meeting of creditors in cases where the record reflects a substitute attorney actually appeared at the § 341 meeting.[3]

2) The substitute attorney who actually appeared for McCartney at the debtor's § 341 meeting did not appear to be compensated by McCartney or the debtor. Thus, McCartney may have sought compensation for service he neither provided nor paid another attorney to provide. Further, McCartney's arrangement with the substitute attorney was not disclosed to the Court and, in those cases in which the attorney was paid by McCartney, this was not disclosed to the Court or the debtor. In addition, the substitute attorney failed to file disclosures of compensation.

3) McCartney charged an "average fee" for many services unrelated to the actual time spent on tasks. Specifically, he appears to have used a "template" with fixed times for particular tasks, rather than keeping contemporaneous time records.

In the within case, McCartney's fee application (Docket No. 98), discloses he charged the Debtors' bankruptcy estate $185 to travel to Denver for a hearing on May 1, 2006, $138.75 for travel from Denver for the same hearing, and $108.50 for travel expenses for that hearing. However, the Minutes of Proceeding for the May 1, 2006 hearing (Docket No. 31) reflect McCartney appeared by telephone. According to the UST, the $432.25 charged to the Debtors' estate for non-existent travel provides cause for the complete denial of compensation in this case under § 328(c).

The UST points out the Standing Chapter 13 Trustee in Wyoming routinely files copies of § 341 minutes in Chapter 13 cases with the bankruptcy court. This is not done in the District of Colorado, yet $37 was charged for "Download Read and Review Trustee's minutes from 341 meeting" in each of the Colorado Chapter 13 cases reviewed by the UST.

Also according to the UST, and conceded by McCartney, on June 14, 2010, McCartney filed a Chapter 13 case for Emiliano Vargas Gonzales, Case No. 10- 24815

---

[2] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[3] According to UST's Exhibit 1 and McCartney's Exhibit B, the substitute attorneys were Al Liepas, Dennis Love, and Sean Cloyes. Cases in which substitute attorneys appeared were *In re Rodriguez*, 06-16984 MER; *In re Hancock,* 06-17402 HRT; *In re Segura,* 08-13280 SBB; *In re Senteno,* 09-11627 SBB; *In re Rodriguez,* 09-11814 HRT; *In re Aguilar,* 09-36869 MER; *In re Schlager,* 10-10653 HRT; *In re Moody,* 10-14295 SBB; *In re White,* 10-14516 EEB; *In re Sawtelle,* 10-14205 EEB*;* and *In re McGaughey,* 10-14220 ABC*.*

MER.  On June 15, 2010, McCartney filed a voluntary Chapter 11 case for Vargas Construction, Inc., Case No. 10-24914 EEB.  Emiliano Vargas Gonzales is listed in the Statement of Financial Affairs filed by Vargas Construction as its 100% shareholder, yet neither the voluntary petition in the *Vargas Construction* case nor in the *Emiliano Vargas Gonzales* case discloses the other case as a related case.[4]

McCartney admitted the fee applications for the subject cases contain mistakes, but stated he corrected the mistakes or "wrote down" the entries on which mistakes were made.  For example, he acknowledged 13 of the cases cited by the UST involve applications requesting fees in excess of the Rule 2016 disclosures, and stated he was willing to amend the Rule 2016 disclosures in those cases.  Further, he admitted to filing the Rule 2016 disclosure pertaining to *In re O'Brien*, a Wyoming case, in *In re Church*, a Colorado case.  He also stated Colorado fee applications reflecting downloading and reading of § 341 meeting minutes resulted from mistakes by his assistant, because although he reviews the Chapter 13 Trustee's concerns in both Wyoming and Colorado, online review only occurs in Wyoming cases.  McCartney denies filing "untruthful" fee applications, and asserts he routinely makes reductions in the actual cost of his services.  Thus, he contended, in *Bernhardt*, where he appeared by telephone and yet billed for a personal appearance, the additional fees were subsumed by his commonly-taken write-downs.

Substitute § 341 attorney Dennis Love was an employee of McCartney at the time he appeared at § 341 meetings in McCartney's stead, but the other substitute attorneys were not.  McCartney further stated the substitute attorneys were paid between $35 and $50 per appearance from the fees paid to McCartney, although such fees were allowed to build up over time, and appearances were sometimes made by substitute attorneys in exchange for advice or assistance from McCartney on other cases being handled by the substitute attorney.  McCartney acknowleged those attorneys did not file Rule 2016 disclosure forms, stating he did not believe they were required to do so when acting as substitute counsel for a § 341 meeting.  However, he conceded the fee applications filed in those cases reflected he had personally appeared at the § 341 meetings, rather than a substitute attorney.

McCartney stated several of the cases at issue involved work in excess of average Chapter 13 tasks, and he could not justify "writing down" the requested fee to the "presumptively reasonable" amount.[5]  However, he also asserted that in approximately 15 of the cases in which he could have sought additional fees, he requested only the presumptively reasonable fee.

---

[4] Regarding the *Vargas* cases, McCartney asserted the corporate case was supposed to be a Chapter 7, but the Chapter 11 was filed to avoid the loss of the Debtor's company's bank balance, and the Chapter 11 remained in Chapter 11 only 17 days.

[5] See Local Bankruptcy Rule 2016-3(a).

McCartney alleged he keeps contemporaneous time records, but admits he uses a "template" for creating time entries on fee applications filed in Chapter 13 cases. He stated he adopted this practice because the Chapter 13 Trustee in Wyoming was very active in objecting to fees. McCartney therefore created a template, which has varied over time, to address the Wyoming Trustee's most frequently raised objections, consisting of common tasks and the amount of time for each task typically approved by the Wyoming Trustee. He further conceded he does not often vary the time for common services, such as drafting a Chapter 13 plan.

The billing summary which constitutes both McCartney's Exhibit B and the UST's Exhibit 1 shows "write downs" totaling $12,012.69. However, it also shows flat, or "template" charges for the following "work/service categories":

1) Section 341 meetings at $185 each (some with "guest attorney" appearances).

2) "Download, read, and review Trustees' minutes from 341 meeting" at $37 each–a charge Mr. McCartney admits is inapplicable in Colorado because the Chapter 13 Trustee does not post minutes online.

3) "Read and review informational memorandum from Trustee" at $37 each–a charge Mr. McCartney indicated applied to Colorado cases. Since each case and each charge reflects $37, it appears that Mr. McCartney not only billed a flat rate for review of the Trustee's notes in whatever format, but he double-billed for the cases before the Court, charging for the Colorado format as well as the Wyoming format.

4) "Prepare, file and serve fee application and cover sheet" at $75 each–this reflects a flat rate, and suggests some of the work involved might be clerical in nature.

5) "Review fee application and cover sheet," charged at $37.50 in the *Bernhardt* and *Gonzales* cases, and $55.50 for the rest of the cases. Again, such billing reflects flat rates, not actual time spent, and appears to be the same work as the $75 charge for "Prepare, file and serve fee application and cover sheet."

With regard to all the listed cases, the total fees and expenses in each of the cases vary between $2,900 and $3,300.[6] A "write down" appears to be taken to bring the cases' fees and expenses down to the "presumptive fee in place" (the so-called

---

[6] An exception is the *Bernhardt* case, which lists $6,835 in total fees and expenses.

"short form" or "presumptively reasonable" fee amount) and to a fee reflected as the maximum fee per the Rule 2016 disclosure statement.

For the last seven cases listed on the summary, no itemized dollar amounts are given for fees. Instead, the notation is simply "flat rate," with *In re Church*, 08-29920 SBB, being described as "a mess." In addition, the summary describes the *Bernhardt* case as "a mess."

As noted above, McCartney's Exhibits A, C, and D show flat rate billings of $185 for attendance at Section 341 meetings. They also reflect hiring of substitute or "guest" attorneys to appear at certain § 341 meetings. It is never made clear what actual time was spent by either Mr. McCartney or the substitute attorney in preparing for or attending the meeting.

McCartney's Exhibit G is entitled "LOKMPC Current Colorado Fee Application Template." It shows different activities anticipated in Chapter 13 cases, together with their anticipated times and costs. This exhibit clearly demonstrates McCartney uses, at least as a starting point, a template system with flat or average fees calculated for each task anticipated in a Chapter 13, rather than keeping track of the actual time spent on actual tasks.

McCartney's Exhibit R, which is the same as the UST's Exhibit 3, consists of McCartney's Rule 2016 disclosures filed in all the subject cases. These disclosures specifically indicate fees will be charged based on actual time spent. However, McCartney himself admits to using a template, rather than contemporaneous time records.[7]

---

[7] Paragraphs 4, 5, and 6 of the form state:

There are two aspects of my Chapter 13 fee. The first is a prepetition sum which was earned at the time the case was filed, and paid directly [t]o me prior to the filing of the petition in bankruptcy. This sum generally includes meeting with the client(s), review of the pre-prepared financial information, discussing option[s] under the various chapters of Title 11, discussion of the rights and responsibilities of an ongoing Chapter 13 case, and preparing, filing, and serving all required petitions, schedules, and disclosures.

The second part of my Chapter 13 fee agreement represents post-petition expenses and services. This sum generally includes preparing, filing, and serving the Chapter 13 Plan, Plan Summary, meeting with the client and representation at the § 341 Meeting of Creditors, and all necessary documents required to confirm a Chapter 13 Plan. This may include amendments to the debtor client's schedules and/or proposed Chapter 13 Plan, and attendance at a contested confirmation hearing if objections cannot be dealt with through negotiation, and generally all normally occurring matters up to and including confirmation.

Compensation for all post-petition services, **based on actual time spent** and services provided, will be sought on an Application for Professional Compensation to be paid by the

## DISCUSSION

### A.  The Basis of Review is FED. R. CIV. P. 60(b).

Although the UST frames his Motion as a request to examine the reasonableness of fees and to award sanctions in the form of ordering the disgorgement of fees, the Court notes in each of the cases listed in the UST's Exhibit 1, orders granting the award of the fees requested have entered without objection by any party in interest.  The most recent of the orders awarding fees was January 31, 2011.[8]  The UST's Motion was filed March 17, 2011.  Since the Motion was filed more than 14 days after the most recent of the orders awarding fees, and often more than a year after such orders, the Court will consider it a motion for relief pursuant to FED. R. CIV. P. 60(b), made applicable to bankruptcy proceedings by FED. R. BANKR. P. 9024 ("Rule 60(b)").[9]

Relief from judgment under Rule 60(b) falls within the discretion of the Court, but such relief is extraordinary, and should only be granted in exceptional circumstances.  The burden of proof on a movant is a high one, because a Rule 60(b) motion is not a

---

Chapter 13 Trustee under the terms of the Debtor's Chapter 13 Plan.  ALL BANKRUPTCY ATTORNEY'S FEES ARE ALLOWED ONLY WITH THE APPROVAL OF THE UNITED STATES BANKRUPTCY COURT.

McCartney's Exhibit R, UST's Exhibit 3, pp. 2-3, ¶¶ 4– 6 (emphasis added).

[8] *In re Marshall*, 10-32100 ABC.

[9] Rule 60(b) provides in pertinent part:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

substitute for an appeal.[10]  Therefore, the Court will evaluate the evidence presented pursuant to the requirements of Rule 60(b).  According to the evidence presented, the UST's basis for seeking vacatur of the previous orders approving fees in the cases before the Court falls under subsection (3) of Rule 60(b), that is fraud, misrepresentation, or misconduct by McCartney.

### B.  In the *Bernhardt* Case the Evidence Supports Rule 60(b) Relief in the Form of Sanctions Requiring Disgorgement of All Fees.

The primary evidence presented to the Court pertains to the *Bernhardt* case. Although the Trustee asserted matters of which he complained in *Bernhardt* also appeared in other cases, he presented little specific evidence as to those cases.

By contrast, in *Bernhardt*, McCartney's Rule 2016 disclosure reflected anticipated compensation in the amount of $1500.  The *Bernhardt* Chapter 13 plan, to which Wilshire Credit Corporation and the Chapter 13 Trustee objected, was set for hearing May 1, 2006. On April 26, 2006, McCartney filed a Motion for An Order Allowing Appearance by Telephone (Docket No. 28).  The Motion was granted (Docket No. 29), and the Court's minutes of proceedings show he indeed appeared by telephone (Docket No. 31).

However, McCartney's fee application, (Docket No. 98), discloses he charged the Debtors' bankruptcy estate $185 to travel to Denver for a telephonic hearing on May 1, 2006, $138.75 for travel from Denver following the same telephonic hearing, and $108.50 for travel expenses for that hearing.  The plan was thereafter amended and objected to four times, with a verification of confirmable plan, together with a fee application, being filed on September 27, 2006 (Docket Nos. 101 and 102).  McCartney initially had failed to provide notice of the fee application to the Debtors, but did so following a compliance order from the Court.

The *Bernhardt* fee application states McCartney had received $1,185 prior to the filing of the fee application, and seeks fees of $2,958.34, and expenses of $541.66, for total compensation of $3500.  The fee application not only reflects travel time and expenses for the May 1, 2006 hearing at which McCartney actually appeared telephonically, but reflects both the "template" entry for downloading and reviewing the Trustee's Minutes from the Section 341 meeting (the Wyoming practice, not applicable in *Bernhardt*) as well as the "template" entry for review of the Trustee's Informational Memorandum (the Colorado practice).  The fee application also reflects total fees and costs of $6,865.16, less a "retainer" of $1585, less a "write-down" of $1750.16, for a balance sought from the estate of $3500.  Thus, the fee application suggests $3335.16

---

[10]  *See Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir.1996); *United States v. 31.63 Acres of Land*, 840 F.2d 760, 761 (10th Cir.1988).

was subtracted from $6865.16, leaving $3500 still owing from the estate. Adding this to the "retainer" of $1585 gives $5085 in total fees. However both the cover sheet for the application and the proposed order indicate the total compensation sought was $3500. Moreover, assuming $5085 was the fee requested, an amended Rule 2016 notice was required, which was never filed.

The confusion and lack of disclosure in the *Bernhardt* case support vacating the December 7, 2006 fee order pursuant to Rule 60(b). In addition, the Court finds the issues raised by the lack of disclosure and inaccuracies in the fee process warrant sanctions in the form of disgorgement of all fees received in the *Bernhardt* case.

### C. The Evidence Supports Sanctions for Cases In Which Non-Employee Substitute Attorneys Appeared.[11]

McCartney admits his use of undisclosed "appearance attorneys" to attend § 341 meetings held in Denver. While it is not *per se* improper to use the assistance of an employee or a fellow attorney to "cover" when McCartney cannot attend a meeting, § 504 of the Bankruptcy Code provides, with some narrow exceptions, a person receiving compensation under § 330(a) may not share, or agree to share, that compensation with another person. Rule 2016(b) also requires every attorney for a debtor, whether or not he or she applies for compensation, to file a statement under § 329, and indicate whether the attorney has shared or agreed to share compensation with any other entity.

Moreover, under the Colorado Rules of Professional Conduct, if any lawyer other than the lawyer engaged by the client is used, the client must consent to the use of the additional lawyer after full disclosure of the fees to be charged, and any division of fees between lawyers must be accompanied with the written consent of both lawyers, following informed consent of the client. COLO. R. PROF. CON. 1.5(d)(2) and (4). Although circumstances may arise which permit counsel in bankruptcy cases to enter an agreement with debtors under which counsel will not appear at the § 341 meeting, in the absence of such an agreement, failure to attend the § 341 meeting may create cause for disgorgement of fees.[12]

---

[11] The cases are: *In re Rodriguez*, 06-16984 MER, *In re Hancock*, 06-17402 HRT; *In re Segura*, 08-13280 SBB; *In re Senteno*, 09-11627 SBB; *In re Rodriguez*, 09-11814 HRT; *In re Moody*, 10-14295 SBB; *In re White*, 10-14516 EEB; *In re Sawtelle*, 10-14205 EEB; and *In re McGaughey*, 10-14220 ABC. The Court has not included *In re Aguilar*, 09-36869 MER and *In re Schlager*, 10-10653 HRT, because the appearance attorney in those cases, Dennis Love, was identified by McCartney as his employee.

[12] *In re Merriam*, 250 B.R. 734, 738-39 (Bankr. D. Colo. 2000); *In re Babies*, 315 B.R. 785, 793 (Bankr. N.D. Ga. 2004).

Without the proper consent of the client, counsel cannot pass the obligation to "appearance attorneys."[13] Therefore, an attorney who requires the assistance of non-employee counsel to attend a § 341 meeting must 1) obtain the filing of a Rule 2016(b) disclosure statement by such counsel; and 2) obtain the consent of the client for such counsel's appearance.

The Court finds the failure to disclose the use of the substitute attorneys, in advance of such attorneys' appearances, deprived the debtors in the above-listed cases of an opportunity to consent or object to such appearances. In addition, McCartney's testimony that such appearances were paid for out of the fees obtained in the case, at the rate of $35 to $50 per appearance, constitutes improper fee sharing under § 504 and COLO. R. PROF. CON. 1.5(d). Such actions, even if committed without the intent to defraud the Court, could comprise misconduct warranting relief, under Rule 60(b)(3) by vacating the orders approving fees in such cases. However, in the circumstances in this case and the vagueness of the evidence provided, this Court finds limited sanctions pursuant to § 105 are more appropriate.

The Court's task then becomes determining what constitutes appropriate sanctions. In evaluating a request for sanctions, a court must consider the following non-exclusive factors: "1) the opposing party's reasonable expenses incurred as a result of the violation, including reasonable attorneys' fees; 2) the minimum amount necessary adequately to deter future misconduct; and 3) the offender's ability to pay."[14] Moreover, the Court "may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances."[15]

With respect to the first and third elements cited in *Masunaga*, the Court notes there is no evidence as to the UST's expenses, nor as to McCartney's ability to disgorge fees. With respect to the second element, the Court finds McCartney's candor and willingness to correct his procedures supports a finding that future problems will be averted by payment of $500 per case, for total monetary sanctions of $4,500, in the above listed cases only, together with an admonishment to McCartney to change his practices to conform to the Code, Rules, and Local Rules, as discussed below, in all cases going forward.

---

[13] *See Babies*, 315 B.R. at 791-94; *Koscove v. Bolte*, 30 P.3d 784, 786 (Colo. App. 2001).

[14] *Masunaga v. Stoltenberg (In re Rex Montis Silver Co.)*, 87 F.3d 435, 439-440 (10th Cir. 1996) (citing *White v. General Motors Corp., Inc.*, 908 F.2d 675, 684-685 (10th Cir. 1990).

[15] *Masunaga*, 87 F.3d at 440; *White*, 908 F.2d at 685.

**D.     The Evidence Does Not Support Relief under Rule 60(b) Nor § 105 in the Remaining Cases Identified by the UST.**

With respect to the remaining cases, the parties addressed several additional issues regarding the propriety of McCartney's Chapter 13 fee practices. These issues need to be corrected, although the Court finds they do not rise to the level of requiring relief from the orders approving fees, pursuant to Rule 60(b), nor additional sanctions under § 105.

First, and most concerning to the Court, the Rule 2016 disclosures filed in the subject cases reflect fees were to be charged based on actual time spent, when in fact McCartney used a template. The Court's examination of the Rule 2016 disclosures supports a finding McCartney simply used the same "form" language in virtually all the disclosures, without considering the particular circumstances of each case.

The Court would remind McCartney the Rule 2016 disclosure is not to be treated as an empty exercise, or the mere filing of a form. Rather, it "is an attorney's certification on which the Debtor, the Court, the Trustee, and the creditors rely."[16] Therefore, McCartney must not, in the future, file Rule 2016 disclosures indicating reliance on actual time spent, unless that is the actual fee agreement with a particular client, and the actual method of calculating fees.

Second, the evidence before the Court, and McCartney's own testimony, shows McCartney used a "template," rather than actual time records, in composing fee applications in which itemized billings were submitted.[17] Further, the "template" and "average" or "flat rate" time entries are presented without an explanation they do not reflect actual time records.

The Court recognizes what every practitioner knows–the keeping of time records can be cumbersome and tedious. However, particularly in an age when computerization removes much of the unpleasant work from timekeeping, such obstacles cannot form an excuse for failure to abide by the requirements of § 330. Going forward, McCartney must change this practice if he is going to seek fees based on actual time spent, or face the consequence of having all fees disallowed.

In addition, the Court finds the evidence presented as to the lack of disclosure of a short-lived related case to *In re Emiliano Vargas Gonzales*, Case No. 10- 24815 MER,

---

[16] *In re Kowalski*, 402 B.R. 843, 848 (Bankr. N.D. Ill. 2009).

[17] McCartney's fee applications reflect "form" time entries and assigned fees rather than actual time spent. UST's Exhibit 1 shows such entries, with the same time and costs in numerous cases for the same types of services. The Court finds these do not represent actual time keeping, but rather an "average" or assigned time given to a specific activity, with a corresponding price for the activity.

and the mistake made in *Church* (filing the Rule 2016 disclosure for *O'Brien*, a Wyoming case) reflect "sloppy" or "rushed" practices. However, they appear to be isolated errors which also fail to warrant Rule 60(b) or § 105 relief.

### E. McCartney Must Change His Chapter 13 Fee Practices in the Future, or Risk Complete Disgorgement of Fees.

Having reviewed the elements of the fee procedures raised in the cases before it, and determined which concerns create grounds for relief under Rule 60(b), the Court must also ensure McCartney's practices going forward comply with the Bankruptcy Code and Rules, and this Court's Local Bankruptcy Rules.

In addressing fees for a Chapter 13 debtor's attorney the Court is guided by § 330 of the Bankruptcy Code, as well as Local Bankruptcy Rule 2016-3 and accompanying commentary.[18]

---

[18] Section 330 provides:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103--

    (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

    (B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

      (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

      (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for--

      (i) unnecessary duplication of services; or

      (ii) services that were not--

           (I) reasonably likely to benefit the debtor's estate; or

           (II) necessary to the administration of the case.

(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

(5) The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

Local Bankruptcy Rule 2016-3 and accompanying commentary provide:

**LOCAL BANKRUPTCY RULE 2016-3**
**COMPENSATION OF CHAPTER 13 DEBTOR'S COUNSEL**

(a) Short Form Fee Application:

    (1) Eligibility: In order to be eligible to use the Short Form Fee Application (the "SFFA") procedure, the applicant must:

        (A) request a fee that is at or below the presumptively reasonable fee (the "PRF") amount provided in the General Procedure Order published by the Clerk, In the Matter of Procedures for Fee Applications in Chapter 13 Cases, as amended from time to time (the "Chapter 13 Fee GPO"), and

        (B) provide the basic services listed in the Chapter 13 Fee GPO (the "Basic Services"), as necessary and appropriate.

    (2) Presumptively Reasonable Fee: The chapter 13 trustee may recommend or the court may determine, in appropriate cases, that a lower

Section 330 and L.B.R. 2016-3 clearly indicate the fees awarded in a case must reflect the actual time spent on necessary services, and a fee request, even for a presumptively reasonable amount, must be backed up by actual time and expense records if questioned. It is well-recognized that bankruptcy courts use the lodestar method, or multiplying the number of hours expended by a customary hourly rate, to determine fees, using the well-known *Johnson* factors to address the reasonableness of

---

fee be allowed. In converted cases, the chapter 13 trustee and the court will take into consideration the compensation already received.

. . .

(b) Long Form Fee Application: If the applicant requests allowance of a fee in excess of the PRF amount (not including expenses) or any of the Basic Services are excluded, the attorney cannot use the SFFA procedure and must use the Long Form Fee Application (the "LFFA") procedure.

> (1) Form of Applications: Applications for allowance of fees and reimbursement of expenses pursuant to the LFFA procedure must be made using L.B. Form 2016-3.2, and must be supplemented by the attachments outlined in L.B. Form 2016-3.2.
>
> (2) Service, Notice and Objections: Debtor's counsel must serve a copy of the LFFA, L.B. Form 2016-3.2, along with a notice in substantial conformity with L.B. Form 2016-3.3, on the chapter 13 trustee, the debtor and those parties requesting notice. The notice, without the LFFA form, must be served on all other creditors, claimants and parties in interest. Parties will have twenty-one (21) days from the mailing of the notice within which to file an objection.

**Commentary**

When requesting fees using the SFFA procedure, attorneys are not required to submit their engagement letter or other fee agreement, detailed time slips, or a narrative unless requested by the trustee or otherwise ordered by the court. However, attorneys are advised that if their fees are questioned, it may be quite difficult to prevail without the assistance of some or all of those items.

the fees.[19] Moreover, the burden of proof on all of these issues is on the fee applicant.[20]

With respect to the specific issues arising in fee applications in Chapter 13 cases, Chief Judge Tallman of this Court has observed:

> Under our current Presumptively Reasonable Fee process, attorneys may agree to take a case on a "flat" or fixed-fee basis if they believe the case can be done for an amount at or below the Presumptive Fee level. Or, they may decide to perform services based on an hourly rate and keep time records if they believe the case will exceed the Presumptive Fee. Each has its risks.
>
> The flat fee may eliminate the need to keep detailed time records; but, if an objection is made to the fees requested, even if the fee is at or under the Presumptive level, the attorney may be hard pressed to carry the burden of proof without detailed, contemporaneous time records. But, if the case does not draw objection, the exercise of record-keeping may be unproductive. On the other hand, the detailed records may provide just the ammunition a party needs to craft an objection to the fees sought. It's a conundrum, but the burden to support the fee request still remains.[21]

In the cases brought before the Court by the UST, McCartney himself admits practices which do not comply with the above requirements. However, McCartney asserts, and attempts to show through his Exhibits H, K and M, the amounts involved in "correcting" the subject fee applications is very small, and the UST's efforts in reviewing such fee applications does not result in significant recovery for debtors or their estates. The Court agrees the monetary amounts are not at all large. Despite the small amounts, however, the Court notes the numerous failures to comply with § 330, the

---

[19] *In re Matney*, 407 B.R. 443, at *5 (10th Cir. BAP March 11, 2009) (table) (citing *In re Miniscribe Corp.*, 309 F.3d 1234, 1243 (10th Cir. 2002) and *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989)). The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the question; 3) the skill requisite to perform the legal service; 4) the preclusion of other employment by the attorney due to the acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations iposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorney; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. The *Matney* Court also pointed out most of the *Johnson* factors are now codified in 11 U.S.C. § 330(a)(3).

[20] "It is the burden of the party applying for attorney fees to establish the extent and reasonableness of the request, supporting the claim with 'meticulous, contemporary time records.'" *Mann v. Reynolds*, 46 F.3d 1055, 1062 (10th Cir. 1995) (quoting *Ramos v Lamm*, 713 F.2d 546, 553 (10th Cir. 1983) (overruled on other grounds, *Pennsylvania v. Del. Valley Citizens' Council For Clean Air*, 483 U.S. 711, 725 (1987)). *See also In re Recycling Industries*, 243 BR. 396, 406 (Bankr. D. Colo. 2000).

[21] *In re McNally*, 2006 WL 2348687, at *4 (Bankr. D. Colo. August 10, 2006) (Not Reported in B.R.).

Bankruptcy Rules, and the Local Rules. Therefore, in addition to the monetary sanctions imposed with respect to certain cases, as outlined above, the Court will direct McCartney to amend his Chapter 13 fee practices before this Court going forward, or risk not only sanctions such as awarded here, but total denial of fees in the future.

## CONCLUSION

For the above reasons,

IT IS ORDERED the Order awarding fees in *In re Bernhardt*, 06-10626 MER is vacated, and McCartney shall disgorge all fees paid in that case and pay them to the Chapter 13 Trustee within thirty days of the date of this Order. In addition, on or before forty days of the date of this Order, McCartney shall file a statement with the Court indicating compliance with this Order for payment.

IT IS FURTHER ORDERED, with respect to the following cases - *In re Rodriguez*, 06-16984 MER, *In re Hancock*, 06-17402 HRT; *In re Segura*, 08-13280 SBB; *In re Senteno*, 09-11627 SBB; *In re Rodriguez*, 09-11814 HRT; *In re Moody*, 10-14295 SBB; *In re White*, 10-14516 EEB; *In re Sawtelle*, 10-14205 EEB; and *In re McGaughey*, 10-14220 ABC, McCartney shall pay $500 for each case as a sanction. Such sanctions shall be paid to the Faculty of Federal Advocate Pro Bono Program, c/o Chad S. Caby, 1200 17th Street, Suite 3000, Denver, CO 80202-5855, within thirty days of the date of this Order. In addition, on or before forty days of the date of this Order, McCartney shall file a statement with the Court indicating compliance with this Order for payment.

IT IS FURTHER ORDERED McCartney shall, going forward, modify his fee practices in all cases before the United States Bankruptcy Court for the District of Colorado, to comply with the requirements of the Code, Rules, and Local Rules, as discussed herein. Specifically, he shall make clear in each Rule 2016 disclosure filed whether his fees will be based upon a flat fee or upon actual time spent. Moreover, he shall be prepared, in "no look" fee cases, to provide actual, contemporaneous time records if the fees are questioned, and, in "long form" fee cases, shall file fee applications which contain such actual, contemporaneous time records. No such records may be based on a "template" or "average" time. In addition, if McCartney obtains the services of a non-employee attorney to represent McCartney's clients at the Section 341 meeting or in any other proceeding connected with the case, 1) such attorney shall file a separate Rule 2016 disclosure; and 2) the clients shall have previously consented to such representation. Failure to comply with these directives may result in the denial of and disgorgement of all fees in a case.

Dated February 28, 2012                               BY THE COURT

_____
Michael E. Romero, Bankruptcy Judge